[No. 11391.    In Bank. — February 15, 1888.]

## AUGUST HEILBRON et al., Appellants, v. LAST CHANCE WATER DITCH COMPANY, Respondent.

75 117
75 427
76 15
75 117
78 379
79 591
75 117
80 609
75 117
90 230
75 117
101 404

Landlord and Tenant — Landlord may Maintain Action for Diversion of Water. — An owner in fee of land, having leased it, and while it is in the possession of the tenant for years, may maintain an action against a third party for the diversion of water from a natural stream running through the land.

Statute of Limitations — Payment of Taxes — Findings. — When the court finds in favor of the defendant upon the plea of the statute of limitations, the failure to find that the defendant has paid all taxes levied and assessed upon the property in controversy is immaterial, when it does not appear that any taxes were ever levied or assessed upon the property.

Appeal from a judgment of the Superior Court of Tulare County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*D. S. Terry, Brown & Daggett*, and *McAllister & Bergin*, for Appellants.

During the time in which the land was in the possession of the tenants under the ten years' lease to St. John, the reversioner could not maintain an action for the diversion of the water, as such diversion was no injury to the freehold. Consequently during such time the statute of limitations did not run in favor of the defendant. (*Jackson* v. *Schoonmaker*, 4 Johns. 402; *Jackson* v. *Sellick*, 8 Johns. 269; *Clarke* v. *Hughes*, 13 Barb. 152; *Wells* v. *Prince*, 9 Mass. 508; *Wallingford* v. *Hurley*, 15 Mass. 417; *Tillson* v. *Thompson*, 10 Pick. 362; *Winslow* v. *Prince*, 6 Cush. 374; *Jackson* v. *Mancins*, 2 Wend. 360; *Jackson* v. *Johnson*, 5 Cow. 74; 15 Am. Dec. 443, 449; Washburn on Real Property, 3d ed., 113, 132, 303; Washburn on Easements, 114; Tyler on Ejectment, 923; *Woodson* v. *Smith*, 1 Head, 276; *Higgins* v. *Crosby*, 40 Ill. 260; *Foster* v. *Marshall*, 22 N. H. 241; *Bickney*

v. *Burridge,* 31 N. J. L. 21; *Baird* v. *Bland,* 3 Munf.
570.)

Wells, *Van Dyke & Lee, Bronson & Wells, Atwell & Brad-
ley,* and *Garber, Thornton & Bishop,* for Respondent.

The diversion of the water in question was an injury
to the freehold for which the reversioner might have
sued notwithstanding the tenancy.   (Gould on Waters,
sec. 376; *Shadwell* v. *Hutchinson,* 2 Barn. & Adol. 97;
*Bedingfield* v. *Onslow,* 3 Lev. 209; *Bell* v. *Twentyman,* 1
Q. B. 766; *Bottishill* v. *Reed,* 18 Com. B. 696; *Potts* v.
*Clarke,* 20 N. J. L. 596; *Tinsman* v. *Belvidere etc. R. R.
Co.,* 25 N. J. L. 255; 64 Am. Dec. 415; *Baker* v. *Sander-
son,* 3 Pick. 248; *Sumner* v. *Tileston,* 7 Pick. 198; *Hastings*
v. *Livermore,* 7 Gray, 194; *Lund* v. *New Bedford,* 121 Mass.
286; *Woodbury* v. *Willis,* 50 Me. 403; *Ripka* v. *Sergeant,*
7 Watts & S. 9; 42 Am. Dec. 214; *Hart* v. *Evans,* 8 Pa.
St. 13; *Robb* v. *Mann,* 11 Pa. St. 303; 51 Am. Dec. 551;
*Schnable* v. *Koehler,* 28 Pa. St. 181; *Seely* v. *Alden,* 61
Pa. St. 302; *Cannon* v. *Hatcher,* 1 Hill, 260; 26 Am.
Dec. 177.)

McFARLAND J. —This is an action to restrain defend-
ant (a corporation) from diverting water from a natural
watercourse called Kings River, and for damages for past
diversion.   The court below, sitting without a jury, gave
judgment for defendant; and from the judgment, and an
order denying a new trial, the plaintiffs appeal.

The plaintiffs, who are August Heilbron, Adolph Heil-
bron, S. Clayburgh, and S. C. Lillis, aver in their com-
plaint that they "are now, and they and their predecessors
and grantors for more than five years last past have
been, the owners and in lawful possession of" a large tract
of land in Fresno and Tulare counties in this state, called
the "Rancho Laguna de Tache."   The facts about their
title and possession, as proven and found by the court,
are these: On and prior to September 23, 1868, the title

in fee to the said rancho was in Jeremiah Clarke, to whom it had come by mesne conveyances from Manuel Castro, to whom before that time it had been patented by the United States government. On said September 23, 1868, said Clarke leased the rancho to Edwin St. John for a term of ten years 'from and after November 1, 1868. St. John took possession under the lease, and so held possession until the tenth day of September, 1874, on which day, with consent of Clarke, he transferred his unexpired leasehold to the plaintiffs herein, who then entered and have been in possession continuously until the commencement of this action, which was October 12, 1883. On April 24, 1877, Clarke made a contract with plaintiffs, by which the term of the lease to St. John was extended for the further period of six years, ending November 1, 1884, and plaintiffs were given the privilege of buying a part of the land at a specified price. On May 1, 1880, Clarke made another contract with plaintiffs, by which he leased said rancho to plaintiffs for the term of ten years from said May 1st, with the privilege of buying the whole of the land, and canceled the contract and lease of April 24, 1877. And since May 1, 1880, plaintiff's possession has been under the said contract made that day. Clarke is still the owner in fee of the land. He is not a party to this action.

Along this land, and forming a boundary of it for many miles, there is a natural watercourse called Kings River. The defendant, by means of a dam and ditch, has diverted a large amount of the water of this river, and carried it away from said land, and continues to so divert and carry it. Plaintiffs bring this action to restrain such diversion and for damages, basing their cause of action upon the right of a riparian owner to have a natural stream continue to flow as by nature it is wont to flow, over, through, or along his land. Defendant contends that by an adverse user for a period of more than five years before the commencement of the action it has

acquired the right to have the water continue to flow in its ditch, and pleads the statute of limitations.

The court below finds that in 1874 defendant constructed the ditch through which the diversion complained of is accomplished, and that in that year it turned the water of said stream, to the extent of a certain number of inches, into said ditch, and has ever since continuously used and diverted that amount of water, and no more, claiming the right to do so; "and that said use and diversion by defendant was actual and continuous, open, peaceful, notorious, and known to plaintiffs, and adverse to them for a period of more than five years immediately preceding the commencement of this action." And there is clearly evidence sufficient to support this finding.

Plaintiffs contend, however (and this contention raises the main issue in the case), that during the lease to St. John, the land being in possession of tenants, the landlord or reversioner, Clarke, could not have maintained an action for the diversion of the water; and that, therefore, the statute of limitations did not begin to run against him during the tenancy. And they invoke the doctrine that title by prescription is based upon the fiction of a lost grant; that no grant can be presumed as against the reversioner, because he has no means of resisting the adverse user; and that a tenant for years can make no grant longer in duration than his term.

It is not entirely clear how this proposition, if tenable, could be made available upon the facts in this case. If the principle contended for were correct, still, if after the adverse user had commenced the term of lease had expired, thus giving the landlord the right to the possession, he could not continue to make new leases, and thus indefinitely postpone the running of the statute of limitations. The theory of appellants is, that, as the first lease to St. John did not expire until November 1, 1878, and the complaint was filed October 12, 1883, therefore

the action—according to their contention—was com-
menced in time.   But in April, 1877, while the adverse
user was in full force, Clarke, by written contract, ex-
tended the lease for six years; thus putting it out of his
power—according to the principle asserted—to sue at
the end of the first lease.   And by contracts and leases
overlapping each other, Clarke has—by the rule con-
tended for—disabled himself indefinitely from bringing
an action for the alleged diversion of the water.   We
mention these difficulties in appellants' way because they
are obvious; but as counsel for respondent have not
very strenuously insisted upon them, we will examine the
case as though the only question presented were, Can the
owner in fee of land, having leased it, and while it is in
the possession of the tenant for years, maintain an action
against a third party for the diversion of water from a
natural stream running through the land?

Section 826 of the Civil Code provides that "a person
having an estate in fee, in remainder, or reversion, may
maintain an action for any injury done to the inheri-
tance, notwithstanding an intervening estate for life or
years."   And it seems clear, upon principle and author-
ity, that the diversion of natural water from land is "an
injury done to the inheritance."   The flow of natural
water over land is a continuous source of fertility and
benefit; and its withdrawal is followed by consequences
which are perpetually injurious to the freehold.   This is
strikingly illustrated by the averments in the complaint
in this case, " that the waters of said Kings River have
hitherto been accustomed to overflow, seep through, and
moisten the lands of said rancho, whereby the fertility
of said lands was greatly increased, and a large and
valuable quantity of natural grass was produced upon
said lands "; and that, by reason of the diversion of the
water by defendant, "said lands have failed to produce
their accustomed crops of natural grass."   The flow of
the water of a stream, whether it overflow the banks or

not, naturally irrigates and moistens the ground to a great and unknown extent, and thus stimulates vegetation; and the growth and decay of vegetation add, not only to the fertility, but to the very *substance and quantity* of the soil.   It is not true, therefore, as claimed by appellants, that the water of a natural stream may be taken away from land for a great number of years, and then turned back, without any permanent injury to the land. Moreover, according to the riparian doctrine (upon which appellants rely in this case), " the right to the flow of water is inseparably annexed to the soil, and passes with it, not as an easement or appurtenant, but *as a parcel.*"  (*Lux* v. *Haggin*, 69 Cal. 390, and cases there cited.) In *Cary* v. *Daniels*, 5 Met. 238, the court say that the right to the use of water flowing over land is undoubtedly *identified with the realty*, and is a *real and corporeal hereditament.*   And consequently, it has been repeatedly held that a reversioner may maintain an action for interference with natural water, although the land be in the actual possession of a tenant for years.   In section 378 of Gould on Waters it is said that " the reversioner may sue for any wrongful interference with the future enjoyment of property.   This includes all acts directly injuring his freehold, and all *adverse uses* tending to establish easements or to abridge his rights."   And at section 379 the learned author says: " In America it has been held that the *freehold is injured* by causing water to flow back upon the plaintiff's land, or into his race, or by the obstruction of his mill by backwater; or again, by withholding water from his mill; or *by diverting a natural watercourse from his land;* or  by polluting the stream; and that *the reversioner may recover for such injuries.*"  In *Hart* v. *Evans*, 8 Pa. St. 14, it was held that " the watercourse was a permanent advantage to the inheritance; and taking it away was an injury to the inheritance for which an action would lie " ; and that " the gist of the action for diverting a watercourse is the *diversion;*

which, in whatever way it is done, is an injury both to *the freehold* and the possession." It seems clear, therefore, that Clarke might have maintained an action against the defendant for the alleged diversion, at any time after it commenced in 1874, and within the statutory period of limitation (whether that period be four or five years); and that not having done so until nearly nine years afterwards, he and the plaintiffs were barred, and defendant acquired title by adverse user. And this is so without considering section 738, Code of Civil Procedure, which provides that " an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim " ; and without regard to the contention of respondents that the statute of limitations cuts off the remedies of all persons whom it does not expressly except.

The point that respondents are not found to " have paid all the taxes, state, county, or municipal, which have been levied and assessed upon said land " (sec. 325 Code Civ. Proc.), is sufficiently answered by the fact that it does not appear that any taxes were ever levied or assessed upon the ditch and water right in question to defendant, or to any person or persons known or unknown.

Judgment and order affirmed.

Thornton, J., Sharpstein, J., Searls, C. J., and McKinstry, J., concurred.

Paterson, J., dissenting. — I dissent. The findings respecting adverse use are contradictory; there can be no adverse use to set the statute in motion where the use is by consent.

The description of the quantity—viz., "fourteen thousand four hundred cubic inches per second, under a four-inch pressure, of the waters of said river"—is uncer-

tain.    If it means fourteen thousand four hundred cubic inches per second," or " fourteen thousand four hundred inches under a four-inch pressure," it is not supported by the evidence.

Rehearing denied.