CALIFORNIA PASTORAL & AGRICULTURAL CO., Limited, et al. **v.**
ENTERPRISE CANAL & LAND CO. et al.

(Circuit Court, S. D. California.   July 6, 1903.

No. 42.

**1.** RIPARIAN RIGHTS—UPPER· AND LOWER PROPRIETORS—DIVERSION OF WATER· FROM STREAM.

Under the settled law of California that each riparian owner on a stream has a right to the natural And ordinary flow of water therein, whether it overflows its banks or not, without diminution in quantity, except in so far as the same may result from the reasonable uses of upper riparian owners, one owner cannot lawfully go above the lands of an upper proprietor and take water from the stream for use on his own lands.

**2.** SAME—SUIT FOR INJUNCTION—ESTOPPEL.

A riparian owner on a stream is not estopped to maintain a suit to enjoin an unlawful diversion of water above his lands by any delay in bringing such suit, short of the statutory period of limitation, nor because of expenditures made in the meantime by defendant in constructing works for such diversion.

**3.** SAME—RIGHT TO INJUNCTION.

Under the law of California a riparian proprietor on a stream (and this includes a lessee) is entitled to an injunction to restrain the unlawful diversion of water from the stream above his land, although the injury caused is incapable of ascertainment or of being estimated in damages.

**4.** SAME—FLOOD WATERS—ANNUAL RISE IN STREAM.

An increased flowage in a stream, occurring annually and lasting for three or four months, does not constitute storm or flood waters which may be impounded and used by any person.

**5.** SAME—RIGHT TO INJUNCTION—SCOPE.

Where a canal unlawfully diverts a part of the ordinary flow of a stream, a lower proprietor is not precluded from maintaining a suit to enjoin its maintenance because it also at times carries flood waters which may be lawfully appropriated, and, in the absence of data upon which to base a different order, the only adequate remedy is to enjoin the entire diversion.

**6.** SAME—PRELIMINARY INJUNCTION.

Where it appears from the undisputed facts that defendants are unlawfully diverting water from a stream above lands of complainant, resulting in continuous injury thereto, which cannot be estimated in damages, and is therefore irreparable, the equitable rule as to comparative hardships, sometimes determinative of motions for provisional relief, does not apply, but complainant is entitled to a temporary injunction.

In Equity.   On motion for a preliminary injunction to restrain the diversion of water from the San Joaquin river.

Charles Page, E. J. McCutchen, Charles W. Willard, R. E. Houghton, and Frank H. Short, for complainants.

N. C. Coldwell, A. Borland, and W. C. Graves, for defendants.

WELLBORN, District Judge.   As the decision of this matter has been considerably delayed already, I shall not take further time to prepare a written opinion, but simply announce now my conclusions.

I. The riparian doctrine, with irrigation as one of its uses, is the settled law of California, and includes a right in each riparian owner to the ordinary flow of the stream, without deterioration in quality or

diminution in quantity, except in so far as the same may result from the reasonable uses of upper riparian owners. Lux v. Haggin, 69 Cal. 256, 391, 10 Pac. 674 et seq.; Hargrove v. Cook, 108 Cal. 72, 77, 41 Pac. 18, 30 L. R. A. 390; Gould v. Eaton, 117 Cal. 539, 542–543, 49 Pac. 577, 38 L. R. A. 181. Reclaimed lands, although originally swamp and overflowed within the meaning of Act Cong. Sept. 28, 1850, c. 84, 9 Stat. 519, are as much subject to said doctrine as any other lands. Lux v. Haggin, supra. Therefore, assuming, for the purposes of this hearing, without, however, deciding the question, that Fresno slough is an inlet or arm, and part of the San Joaquin river, still the defendant J. G. James Company has no right, by virtue of its riparian lands on said slough, to divert the waters of said river at a point above complainants' leased lands. Even if it were shown, which has not been, and, I apprehend, cannot be, done, that, under existing circumstances, all the water proposed to be diverted reaches, through the customary meanderings of the river or otherwise, the lands of said James Company, such diversion could not be lawfully made, for the reason that complainant, as lessee of Herminghaus, unless estopped from asserting the right, is entitled to have said waters flow through its leased lands. There is nothing in Charnock v. Higuerra, 111 Cal. 473, 44 Pac. 171, 32 L. R. A. 190, 52 Am. St. Rep. 195, which militates against this conclusion. It may be further said, in this connection, although not necessary to a disposition of the present hearing, that the impossibility of determining that the water proposed to be diverted would, without such diversion, ever reach the James Company's lands, and also the fact that said diversion exposes the water to evaporation and seepage for many miles before said lands are reached (Ferrea v. Knipe, 28 Cal. 341, 87 Am. Dec. 128), are strong, if not convincing, arguments of the unlawfulness of the diversion, even as against the lands which complainants own in fee.

2. The bill herein assails the point, as well as the fact, of diversion; and the evidence adduced by defendants to establish an estoppel against complainant California Pastoral & Agricultural Company, as lessee of the Herminghaus lands, is insufficient for that purpose. Lux v. Haggin, supra. The case of Curtis v. La Grande Hydraulic Water Co. (Or.) 23 Pac. 808, 25 Pac. 378, 10 L. R. A. 484, is, I think, distinguishable in essential particulars from the case at bar. If not, however, then it is inharmonious with Lux v. Haggin, supra, and I shall follow and apply the rule enunciated in the latter case.

3. "The flow of natural water over land is a continuous source of fertility and benefit, and its withdrawal is followed by consequences which are perpetually injurious to the freeholder. * * * The flow of the water of a stream, whether it overflows the banks or not, naturally irrigates the ground to a great and unknown extent, and thus stimulates vegetation; and the growth and decay of vegetation add not only to the fertility, but to the very substance and quantity, of the soil." Heilbron v. Water Ditch Co., 75 Cal. 117, 121, 122, 17 Pac. 65. "A riparian proprietor," and this includes a lessee (Heilbron v. Fowler Switch Canal Co., 75 Cal. 426, 17 Pac. 535, 7 Am. St. Rep. 183; Heilbron v. Canal Co., 76 Cal. 11, 17 Pac. 933), "is entitled to an injunction to restrain the unlawful diversion of the waters of a stream adjoining his land, although the injury caused by the diversion is incapable of ascertainment,

or of being estimated in damages" (Heilbron v. Canal Co., 75 Cal. 426, 17 Pac. 535, 7 Am. St. Rep. 183; Conkling v. Pacific Improvement Co., 87 Cal. 293–305, 25 Pac. 399). Irrespective of the question of injury, or its estimation in damages, another line of cases hold that a riparian proprietor may enjoin a wrongful diversion above him to prevent such diversion from maturing into a right. Moor v. Clear Lake Water Works, 68 Cal. 146, 8 Pac. 816; Stanford v. Feldt, 71 Cal. 249, 16 Pac. 900; Conkling v. Pacific Improvement Co., supra; Sparger v. Heard, 90 Cal. 221, 27 Pac. 198; Mott v. Ewing, 90 Cal. 231, 27 Pac. 194; Gould v. Eaton, supra. In opposition to the foregoing cases, defendants rely, among others, upon Modoc L. & L. S. Co. v. Booth, 102 Cal. 151, 34 Pac. 431. In so far as the last-named case conflicts, if it does conflict, with those previously cited, I must decline to follow it. Justice McFarland, however, who dissented, commented afterwards upon the case as follows:

"I desire to say, however, that the case of Modoc Land & Live Stock Co. v. Booth, 102 Cal. 151 [34 Pac. 431], cannot be taken as authority for the proposition that a riparian proprietor on an ordinary natural stream cannot, by injunction, restrain an unlawful diversion of the water of the stream, unless he can show actual special damage other than such as thus legally arises from a deprivation of the substance of his estate. To so interpret that case would be to make it overrule every decision of this court upon the subject from the organization of our state government to the present moment. All the Modoc Case decides is that, to use the language in the opinion in that case, taken from Pomeroy: 'Unless the flow of a stream to the land of a riparian proprietor has been appreciably or perceptibly diminished, he is not entitled to an injunction,' etc. Of course, with respect to a river of the size of the Mississippi or the Sacramento, no probable diversion would ever perceptibly diminish the flow of the current. Illustrations drawn from supposed riparian rights in such rivers are scarcely more pertinent than would be illustrations from supposed riparian rights on the Gulf Stream." Vernon Irr. Co. v. Los Angeles, 106 Cal. 256, 257, 37 Pac. 762.

4. The contract between the California Pastoral & Agricultural Company and other persons, as parties, respectively, of the second, third, fourth, and fifth parts, referred to in paragraphs 11 and 12 of defendants' return to order to show cause, and attached as "Exhibit A" to the affidavit of defendant James, was entered into June 4, 1901, while the lease of G. Herminghaus to the California Pastoral & Agricultural Company was made September 1, 1901, and therefore the riparian rights acquired under the latter instrument are unaffected by the former. It is unnecessary now to inquire how, or to what extent, if any, said first-named contract, the one attached as an exhibit to the affidavit of defendant James, changes or affects the riparian rights of the complainant California Pastoral & Agricultural Company, growing out of its ownership of the lands described in Exhibit A to the bill.

5. Storm or freshet waters, which any person who can may impound and use, are "such waters as flow down a stream during and after a rain storm, and which are in excess of the ordinary flow." Fifield v. Spring Valley Water Works, 130 Cal. 552, 62 Pac. 1054. I am of opinion, from the evidence submitted on this hearing, that the waters which the canal and dam in controversy in this suit were intended to divert, and are capable of diverting, do not fall within said definition, but are a flow which comes every year and lasts for three or four months. On

this point, and speaking of conditions almost precisely similar to those here presented, the Supreme Court of the state has said:

"Nor can that flow be said to be an extraordinary flood which can be counted upon as certain to occur annually, and to continue for months. The defendant has no reservoir to retain the surplus waters of casual and unusual freshets, and its works would be of little value if its dependence were only upon such waters." Heilbron v. Canal Co., 75 Cal. 432, 17 Pac. 535, 7 Am. St. Rep. 183.

6. The circumstance that some of the waters of said river, below said point of diversion, at times escape through a natural slough and overflow the banks of the river, does not justify said diversion, nor show that it is without injury to complainants. If it were conceded, contrary to the decision in Heilbron v. Canal Co., 75 Cal. 426, 17 Pac. 535, 7 Am. St. Rep. 183, that the waters which escape and overflow, as above indicated, are wild, surface waters, within the meaning of those terms as used in Cairo & V. R. Co. v. Stevens, 73 Ind. 283, 38 Am. Rep. 139, and other cases* cited at pages 14 and 15 of appellants' brief, and in Miller & Lux et al. v. Enterprise Canal & Land Co. et al. (Cal.) 75 Pac. 770, and further, that defendants' diversion takes some of said waters, still said diversion also includes a part of the ordinary flow of the river, and to that extent is, upon the findings and legal principles above made and enunciated, unquestionably wrongful, and the only way adequate relief can be afforded, in the absence of data upon which a different order might be framed, is to restrain the entire diversion (Conkling v. Pac. Imp. Co., supra; Pokegama, etc., Co. v. Klamath, etc., Co. [C. C.] 86 Fed. 528), at least so far as the appliances of defendants' canal can be employed to accomplish that end. A wrong cannot be justified, or go unredressed, because mingled with it is something else, which, if segregated, would be lawful.

7. The defendants, in their return to the rule to show cause why a preliminary injunction should not issue, and also in the affidavit of E. A. Fotheringham, assert, in general terms, a right by appropriation in the James Canal Company, as successor of the Enterprise Canal & Land Company, to divert 500,000 cubic inches of water; but their diversion was not made until 1898, and long prior thereto complainants' lands were held in private ownership, and five years had not elapsed before the commencement of this suit. Besides, defendants expressly decline in argument to press said claim by appropriation, and I cannot now do otherwise than conclude that it is without merit.

8. From the principles of law enunciated above, and the facts clearly shown in evidence, it follows that the diversion complained of is wrongful, and not an ordinary trespass, but, in reality, a continuous taking of property; and, since said injury cannot be adequately compensated in money damages, and is therefore irreparable (Heilbron v. Canal Co., 75 Cal. 426, 17 Pac. 535, 7 Am. St. Rep. 183), the equitable rule as to comparative hardships, sometimes determinative on motions for provisional relief, is inapplicable (16 Am. & Eng. Ency. of Law [2d Ed.] 360).

---

* McCormick v. Kansas & St. Joe R. R., 70 Mo. 359, 35 Am. Rep. 431; Morris v. Council Bluffs, 67 Iowa, 343, 25 N. W. 274, 56 Am. Rep. 343; Abbott v. Kansas City & St. Joe R. R., 83 Mo. 271, 53 Am. Rep. 581.

Complainants, without reference to the lands which they own in fee, are, by virtue of their lease from Herminghaus, entitled to a temporary injunction, in accordance with the foregoing conclusions, and their solicitors will prepare and submit a suitable order for the issuance of the writ.