[Sac. No. 1059.  In Bank.—January 2, 1906.]

## HUBBS & MINER DITCH COMPANY, Respondent, *v.* PIONEER WATER COMPANY, Appellant.

Water-Rights—Decree Fixing Rights in Stream—Title by Prescription—Findings—Modification of Decree.—In an action to determine the rights of the parties in the waters of a stream, where the decree awarded defendant a prior right to only fifteen cubic

feet of water per second, but the findings clearly establish defendant's title. by prescription to twenty-five cubic feet of water per second superior to any right in plaintiff to any water at all, the decree must be modified accordingly, leaving the adjudged right of plaintiff to fifteen cubic feet per second of water subordinate thereto, and paramount to a subsequent increase in defendant's appropriation.

APPEAL from a judgment of the Superior Court of Tulare County.  W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Alfred Daggett, George G. Murry, and Thomas, Gerstle & Frick, for Appellant.

Charles G. Lamberson, for Respondent.

BEATTY, C. J.—The parties to this action are California corporations organized for the purpose, among others, of acquiring water-rights, and distributing water for irrigation, manufacturing, and other beneficial uses, and the controversy arises out of their conflicting claims to priority in the appropriation of the waters of Tule River, a stream arising in the Sierra Nevada Mountains and flowing in a southwesterly direction, through Tulare County, to Tulare Lake.  The defendant was incorporated in January, 1888, and the plaintiff in November, 1894.  The original complaint, filed in April, 1897, was entirely superseded by an amended complaint filed in November, 1897.  On October 30, 1900, the cause came on for a second trial upon the issues made by the amended complaint and answer thereto.  In November, after the trial commenced, a supplemental complaint and answer were filed.  The trial was by the court, and upon very full findings as to the facts (filed August 30, 1901) a decree was rendered by which the relative priorities of the parties were determined in the manner hereinafter stated.  From that decree the defendant appealed within sixty days after the findings were filed, and in support of its appeal contends that the evidence set forth in its bill of exceptions is insufficient to justify the findings and decision of the court.  It also alleges errors in the rulings of the court at the trial upon objections to evidence, and contends that the findings are at variance with the pleadings, and the

conclusions of law and decree inconsistent with the findings as well as with the facts admitted by the pleadings. It asks that the judgment be reversed and the cause remanded, with directions to the superior court to enter a decree in its favor, adjudging that it has the prior right as against the plaintiff to divert from Tule River fifty cubic feet of water per second, or at least that it has such prior right to divert twenty-five cubic feet per second. But if the court should not deem it entitled to a decree upon the findings and pleadings as they stand, it asks that the judgment be reversed for errors committed at the trial, and for insufficiency of the evidence to sustain the findings, and that the cause be remanded for a new trial. In view of these various contentions, it will be necessary, in the first place, to state the substance of the pleadings and of the findings and conclusions of the court.

It is alleged in the amended complaint that in the year 1862 the grantors and predecessors of the plaintiff constructed a ditch capable of carrying fifteen cubic feet of water per second, by which they did actually divert that quantity of water from Tule River for the purpose of irrigating their lands, watering their stock, and for other domestic uses, and that said ditch from the date of its construction up to the year 1869 did continuously carry that quantity of water for said uses and purposes. It is alleged that a similar appropriation of thirty cubic feet of water per second was made in 1863 by means of a ditch heading in the river above the head of the first ditch, and that it continuously carried to the lands of plaintiff's grantors and predecessors that quantity of water for the uses and purposes aforesaid from the date of its construction until the year 1868. It is alleged that in 1866 the two ditches were connected, and the first ditch enlarged below the point of junction so as to carry all the water diverted by both ditches. It is alleged that in 1869 another ditch was constructed by plaintiff's grantors and predecessors heading in the river at a point between the heads of the first two ditches (of 1862 and 1863), and capable of carrying forty-five cubic feet of water per second, and which was at the date of its construction connected with the first two ditches, and thereafter, until the year 1893, supplied them with water. It is then alleged that in 1893 plaintiff's grantors and predecessors constructed a new ditch heading in the river at a point about six

miles above the head of the ditch of 1869, by which they diverted the forty-five cubic feet of water per second previously appropriated by them, and conducted it to their lands, where it has ever since been continuously used for the purposes aforesaid, except during such times as its diversion has been prevented by the unlawful acts of defendant. It is alleged that in the year 1888 the defendant entered upon the channel of the river at a point above the head of the plaintiff's ditch of 1893 and constructed a dam by which it diverted into a ditch theretofore constructed twenty-five cubic feet of water, which was used by defendant for supplying power to a mill near the town of Porterville; that in 1896 the defendant enlarged this ditch to a capacity of one hundred cubic feet of water per second, and thereafter, during the irrigating season of 1896, diverted that quantity of water from the stream; and finally, that the diversion of said last-mentioned quantity of water interfered with the appropriation by plaintiff of the quantity of water which the plaintiff had been accustomed to divert by means of its said ditch from said river, etc. Upon these and other allegations, not material to the questions arising upon this appeal, the plaintiff prays the judgment of the court enjoining the maintenance of defendant's dam, enjoining any diversion of water by it and for general relief.

The defendant, by its answer to the amended complaint, denies all of the alleged acts of appropriation by plaintiff's grantors prior to the year 1888; denies that it diverted only twenty-five cubic feet per second in that year and alleges that ever since, and including the year 1888, it has diverted seventy-two cubic feet of water per second by means of its dam and the ditch connected therewith, and that it has applied the same to the use of a flouring-mill and to the irrigation of agricultural lands and the watering of stock and to domestic purposes. It denies any enlargement of the ditch in 1896, or at any time, to a capacity of one hundred cubic feet, or at all, and denies that it has ever, at any time, diverted any water in excess of seventy-two cubic feet per second, which amount it admits it is diverting, and will continue to divert, if not restrained. For a further answer and defense to the action the defendant alleges that upon its incorporation in January, 1888, it received a conveyance of the canal and water-rights of a corporation formed in the year 1866, and known as the "Tule River Pio-

neer Water Ditch Company,'' which in the year 1866 had commenced, and in 1867 completed, a ditch by means of which it diverted from the Tule River, at a point several miles above the head of any of the plaintiff's ditches, the full quantity of seventy-two cubic feet of water per second, which said water was appropriated and distributed for the purposes of running a flouring-mill, for irrigation, and watering stock; that the dam in the river was constructed at the same time and ever afterwards maintained peaceably, continuously, and uninterruptedly under claim of right adversely to plaintiff, its predecessors, and grantors from the year 1867 up to the time of its sale and transfer to the defendant in January, 1888; and that during the whole period from 1867 to 1888 the Tule River Pioneer Water Ditch Company diverted and carried away from the channel of said river by means of said ditch and dam seventy-two cubic feet of water per second, which was used for the purposes aforesaid, all of which was done openly, peaceably, continuously, and uninterruptedly, under claim of right adversely to the plaintiff, its predecessors, and grantors, and to the whole world, with the knowledge and acquiescence of the plaintiff, its grantors, and predecessors for more than five years prior to January, 1888.   For further and separate answers defendant pleads various clauses of the statute of limitations, and prays for a decree establishing its prior right to seventy-two cubic feet of water per second, and for general relief.

No reference is necessary to the supplemental complaint and answer, which relate exclusively to changes in the course and connections of some of plaintiff's ditches made since the action was commenced.   The material issues, so far at least as concerns the present appeal, are made by the amended complaint and the answer thereto.   The substance of these pleadings has been fully stated in order that it may clearly appear what the points of the controversy before the superior court were.   And it will be seen that the plaintiff, claiming under appropriations of forty-five cubic feet of water, dating back to 1863 and earlier, makes no complaint of any act of the defendant committed prior to the year 1896, when, as alleged, it increased a diversion of twenty-five feet per second commenced in 1888, and thereafter continued to a diversion of one hundred cubic feet per second.   The diversion of this last-mentioned quantity of

water—i. e., the seventy-five cubic feet in excess of the twenty-five cubic feet diverted ever since 1888—is the only injury alleged, for by that means alone was plaintiff's appropriation of the quantity of water it had been accustomed to divert interfered with. Upon the amended complaint taken *pro confesso* we cannot see how the court could have gone further than to enjoin the defendant from diverting more than twenty-five feet per second, for there is nothing in the complaint to show that the diversion of that or twice that quantity of water by defendant ever had deprived, or ever would deprive, the plaintiff of any part of the forty-five cubic feet claimed by it. The court, however, made findings and adopted conclusions upon which it based a decree more favorable to the plaintiff than its complaint warranted. It was adjudged by the decree that the defendant is the owner and has the prior right to divert from the channel of Tule River at the head of the Pioneer Ditch fifteen cubic feet of water per second at all times before said plaintiff has the right to divert any water from said river; that after the defendant has taken and diverted fifteen cubic feet of water per second the plaintiff is entitled to take and divert twelve cubic feet of water per second from said river; that after plaintiff has diverted and taken said twelve cubic feet of water per second the defendant has the right to take and divert ten cubic feet per second in addition to its first fifteen; that after this additional diversion by defendant plaintiff has the right to three more cubic feet in preference to defendant, and thereafter defendant has the right to divert as much altogether as sixty cubic feet. A perpetual injunction conforming to the terms of the decree follows.

The defendant's appeal is from those parts of the decree which are inconsistent with its claim of prior right to seventy-two cubic feet per second over any right in the plaintiff to divert any water from said river. The findings of the superior court were against the plaintiff upon its allegations as to diversions and appropriations of water prior to the year 1869. On the other hand, it was found that in 1866 the Tule River Pioneer Water Ditch Company commenced, and that in 1867 it completed, a ditch known as the "Pioneer Ditch," from a point on the river entirely above the head of any of plaintiff's ditches to the vicinity of Porterville, by means of which that company diverted twenty-five cubic feet of water per sec-

ond from that year up to the year 1888, and distributed the same for the purpose of running a flouring-mill and for the irrigation of lands along the line of the ditch for watering live-stock, etc. This finding was, however, qualified as follows: "That of the quantity of water diverted by said Pioneer Ditch up to the year 1888 about fifteen cubic feet thereof constantly flowing day and night was used for the purpose of running the said flouring-mill; and was distributed for the purpose of irrigation, for watering live-stock and for domestic purposes at points along the line of said ditch, and said quantity of fifteen feet per second was all that was reasonably necessary for all of said purposes." It is next found that the dam at the head of the Pioneer Ditch was constructed in the fall of 1868, immediately below the point where the channel of the ditch connects with the channel of the stream, and has been maintained at the head of said ditch continuously ever since under claim of right adversely to plaintiff and its predecessors, and during all of said time its maintenance has not been interrupted or disturbed by plaintiff or its predecessors, though its existence and maintenance by defendant and its predecessor, the Tule River Pioneer Water Ditch Company, was at all times well known to plaintiff and its predecessors and grantors. It is found that the first appropriation of the waters of Tule River by the predecessors of plaintiff was made in 1869 by means of a small irrigation ditch, through which they diverted about six cubic feet of water per second at first; that subsequently the area of land irrigated from this ditch was increased, and the ditch enlarged so that in 1875 twelve cubic feet per second were diverted and used for irrigation, etc., during that season of the year when water flowed down the channel of Tule River to the head of the Hubbs & Miner Ditch; that said river from the time the Pioneer Ditch was constructed down to the commencement of this action carried no water in its channel to the head of the Hubbs & Miner Ditch from and after the first day of August of each year until the 15th of November following, but carried water the year round down to and past the head of the Pioneer Ditch; that said Hubbs & Miner Ditch never had a capacity in excess of six cubic feet of water per second prior to 1875, and never was connected with the ditches alleged to have been constructed in 1862 and 1863. It is next found that the defendant was

incorporated January 8, 1888, and that on the thirteenth day of the same month the Tule River Pioneer Water Ditch Company sold and conveyed to it in fee simple absolute said Pioneer Ditch and all the water-rights, easements, etc., thereto appertaining, and thereupon defendant entered into possession of said ditch, water-rights, etc.; that thereafter it increased its diversion of water until in the year 1893 it was taking from the channel of the river fifty cubic feet per second, and this increase continued until 1897, so that at the commencement of the action it was diverting sixty cubic feet per second, all of which has been used by defendant in irrigating about three thousand five hundred acres of land and for other beneficial purposes. It is next found that after the incorporation of the plaintiff in 1894, it acquired the title to the Hubbs & Miner Ditch constructed in 1869, together with all of the water-rights and easements appertaining thereto; that in the year 1888 said ditch, when there was sufficient water in the channel of the river at its head, carried away fifteen cubic feet per second, which was used for irrigation of six hundred and forty acres of vineyards, orchards, grain, and alfalfa. The eleventh finding is somewhat ambiguous in its terms, but I construe it to mean that the defendant never after it became the owner of the Pioneer Ditch made any enlargement thereof prior to the fall of 1888, and that it has never at any time diverted from the river more than sixty cubic feet of water per second. The twelfth finding relates to the plea of the statute of limitations, and is as follows: "That the said Tule River Pioneer Water Ditch Company, from and including the year 1867 up to the time said Pioneer Ditch was sold and conveyed to the defendant, as hereinbefore stated, diverted and carried away from the channel of said Tule River, by means of said Pioneer Ditch and said dam constructed at the head thereof, twenty-five cubic feet of water per second, which said water was diverted and used in the manner stated in the fourth paragraph of these findings, but no more than fifteen cubic feet of water per second was necessarily used in said manner for said purposes, and that the diversion of said water, to the quantity of fifteen cubic feet per second, and the maintenance of said dam, was done by said Tule River Pioneer Water Ditch Company peaceably, continuously, uninterrupt-

edly, under a claim of right adversely to said plaintiff, its predecessors, and grantors, and to the whole world, with the knowledge and acquiescence of the plaintiff, for more than five years immediately prior to the 13th day of January, 1888, and thereafter until the commencement of this action, and the said Tule River Pioneer Water Ditch Company during all of said times paid all state and county and other taxes, which were levied and assessed upon said Pioneer Ditch and said dam and the water-right appertaining to said Pioneer Ditch and belonging thereto.'' Other findings of the court relate to matters immaterial to this discussion.

The argument of appellant opens with a discussion of certain alleged errors of the superior court in ruling upon objections to evidence offered at the trial by respondent. But since these rulings, if erroneous, could have had no effect, except to render the findings somewhat less favorable to appellant than otherwise they would have been, it will be wholly unnecessary to consider them, if upon the facts found and admitted it shall be held that appellant is entitled to a decree awarding it the prior right to not less than twenty-five cubic feet of water per second. For, as above stated, we understand the position of counsel to be that a retrial of the issues is desired only in case such a modification of the decree cannot be made upon the record as it stands. We shall therefore first consider the question of modification. The claim of defendant to a prior right to fifty cubic feet per second cannot be sustained. Both plaintiff and defendant are mere appropriators of the waters of a natural stream for use on non-riparian lands, and since it is found that plaintiff made a valid appropriation of at least twelve cubic feet per second before defendant ever diverted more than twenty-five cubic feet per second, it is clear that defendant cannot, as an appropriator, claim a prior right to more than twenty-five cubic feet on any theory of the law of appropriation. Nor can it claim a superior title to a greater quantity by prescription. Five years adverse user is the period of prescription in such cases, and there is no finding that defendant diverted fifty cubic feet per second, or any definite quantity in excess of twenty-five cubic feet, prior to the season of 1893, which was less than five years before the commencement of the action. It is not inconsistent with

the findings to suppose that defendant as early as 1892 diverted more than twenty-five cubic feet per second through the Pioneer Ditch, but this is a mere conjecture upon which no order can be based. All that clearly appears is that from the year 1888 down to the year 1893 defendant continually diverted and applied to beneficial uses twenty-five cubic feet per second. In 1893 it was using fifty feet, and thereafter increased its appropriation to sixty feet.

The claim of prior or prescriptive right to twenty-five cubic feet per second rests upon firmer ground. It is by no means clear that the failure of defendant's predecessors to use the entire quantity of water by them diverted in 1868 down to the year 1888 would cut their appropriation down to the quantity used. There are cases which hold that the diversion of a large quantity of water is a good appropriation of the whole *ab initio,* although it is not all used at first, if the design is to gradually extend the use, and that design is carried out before an adverse appropriation of the surplus below the point where it is returned to the stream. But this is a point which has not been argued, and we merely allude to it in passing. For, irrespective of any claim to priority as an appropriator, we think the findings sustain the conclusion that defendant has a perfect prescriptive title to twenty-five cubic feet per second. The twelfth finding above quoted does not sustain this claim, for in terms it deals only with the rights acquired by defendant's predecessor, the Tule River Pioneer Water Ditch Company, to the use of fifteen cubic feet per second. But in the fourth, sixth, seventh, and other findings facts are found which include all the elements of a prescriptive title in defendant to the use of twenty-five cubic feet per second superior to any right in plaintiff to any water at all. It is there found that from the year 1868 to the beginning of the action the dam by which water is diverted from the stream through the Pioneer Ditch has been maintained continuously, and uninterruptedly, under a claim of right, and adversely to the plaintiff and its predecessors and grantors, and that during all of said time the maintenance of said dam was not disturbed by the plaintiff, or any of its grantors or predecessors in interest, and that its existence and maintenance by defendant and its predecessors was during all said time well known to

plaintiff and its predecessors. It is found that in 1888 defendant succeeded to the title and rights of the Tule River Pioneer Water Ditch Company in and to said dam and ditch, and during that season, and ever since, has continuously diverted and applied to beneficial uses twenty-five cubic feet of water per second, which by 1893 was increased to fifty cubic feet, and since that time to sixty feet. Necessarily the use of this water has been adverse to the right asserted by plaintiff and its predecessors, and actionable at all times when such use deprived them of the full quantity by them appropriated, and this, according to the findings, has happened every year between August and November, when defendant was diverting twenty-five feet per second through the Pioneer Ditch, and no water flowed to the point of plaintiff's diversion. The authorities which support this view are numerous and uniform. We cite the following: *Coonradt* v. *Hill,* 79 Cal. 587, [21 Pac. 1099]; *Smith* v. *Hawkins,* 110 Cal. 122, [42 Pac. 453]; *Gallaher* v. *Montecito V. W. Co.,* 101 Cal. 242, [35 Pac. 770]; *Spargur* v. *Heard,* 90 Cal. 222, [27 Pac. 198]; *Heilbron* v. *Last Chance Co.,* 75 Cal. 117, [17 Pac. 65]; *Alhambra Co.* v. *Richardson,* 72 Cal. 598, [14 Pac. 379].

The judgment of the superior court is reversed and the cause remanded, with directions to the superior court to enter a modified decree upon the findings, awarding to the defendant as against the plaintiff the prior right to divert from the Tule River twenty-five cubic feet of water per second, after which the plaintiff will be entitled as against the defendant to the next fifteen cubic feet of water per second, and the defendant against the plaintiff to the next thirty-five cubic feet of water per second.

McFarland, J., Angellotti, J., Henshaw, J., and Lorigan, J., concurred.