[No. 12495. In Bank. — March 12, 1889.]

GIOVANI ONETO, Appellant, v. GIACOMO RESTANO, Respondent.

Findings — Title to Water from User. — A finding which does not show that the use of water was adverse does not show a right to the water.

Id. — A finding that the party used the water "as his own property" is not equivalent to a finding that the use was adverse.

Findings of Probative Facts. — Findings of probative facts are not sufficient if the ultimate fact does not *necessarily* result from the facts found.

Construction of Lease — Instance of Use not Adverse. — Where a lease by a party was of "one half of the water flowing in his ditch every alternate day from twelve o'clock noon to twelve o'clock noon of the next day," and the parties thereafter each used the whole stream on alternate days, *held*, that the circumstances, and the practical construction of the parties, showed that the intention was, that one half of the water was leased, and that such half was to be arrived at by the use of the whole stream for half the time; that such use of the whole stream was under the lease, and not adversely to the lessor; and that the lessee could not base a claim to half the stream upon such use.

Adverse Use — Repudiation of Lessor's Right. — Where the grantee of land repudiated a lease of a water right under which his predecessor had used the water, and claimed the water absolutely, and thereupon a verbal sale of the water right to him by the lessor of his predecessor for a price which was paid, *held*, that while there was no valid conveyance of the water right, yet that what occurred amounted to a repudiation of the lessor's right, acknowledged by the latter; and that the use thereafter must be held to have been adverse.

Adverse Possession — Payment of Taxes — Burden of Proof to Show Assessment. — The requirement of payment of taxes as an element of adverse possession does not apply where no taxes have been assessed. And the burden of showing that taxes have been assessed is upon the party combating the claim of possession.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order refusing a new trial.

. The facts are stated in the opinion.

*F. W. Street,* and *A. L. Hart,* for Appellant.

*F. D. & G. W. Nicol,* and *P. W. Bennett,* for Respondent.

HAYNE, C.—Suit to determine the right to certain water. The trial court gave judgment for the defendant, and the plaintiff appeals.

The subject-matter of the suit, as defined by the complaint, is the water of a certain spring, which the predecessor of the plaintiff conducted through a flume or ditch, across the land of the predecessor of the defendant to his own land. The answer hints at other water coming through the same flume or ditch. And the findings set forth the fact. For while it is found that one Joseph Bache, the plaintiff's predecessor, was the owner of the spring, it is also found that he and other parties "did, by means of the said ditch and flume, commence to collect therein and convey therethrough the water of said spring, *together with the waters of Sonora Creek.*" And all through the findings, the water in controversy is spoken of as the water "of said creek and spring." It would seem from the evidence that the main portion of the water comes from the spring. But the relative proportions are nowhere shown. It does not appear what right the parties had to the waters of the creek; but it seems that they treated it as on the same footing as the water of the spring. For in the lease mentioned below, they refer to the water as that flowing through the ditch, which phrase would include the water from both sources. But it is evident that the right of the plaintiff to the waters of the spring would not be affected by the fact that other water flowed through the ditch. And for the purposes of this opinion we shall consider

the subject of the action to be that alleged in the complaint, viz., the water of the spring.

In view of the fact that the predecessor of the plaintiff is found to have been the owner of the spring, the defendant's claim to its waters can only be sustained upon the basis of a prescriptive right. And we think that the findings are not sufficient to support a judgment in his favor upon that ground.

The finding in this regard is, that "the possession, claim, and use of the defendant and his grantors, as in these findings set forth, has been quiet, peaceable, open, and notorious." This finding is clearly insufficient, in that it does not state that the use was adverse or continuous. (*Unger* v. *Moonjy*, 63 Cal. 595; 49 Am. Rep. 100.) In another place the findings show that the use was continuous. But they nowhere show that it was adverse. The statement that the defendant used the water "as his own property" does not necessarily mean that the use was adverse to the plaintiff. Defendant may have had a qualified or limited property in the water. If the use was under a lease from the plaintiff's predecessor, it might be said in one sense that defendant used the water "as his own property." Where a party relies upon a prescriptive right, the finding should not be in any such ambiguous phrase. There is nothing inconsistent with this in the *Alhambra Addition Water Company* v. *Richardson*, 72 Cal. 603. There the finding expressly stated that the use of the water was "adversely to the whole world." Nor do the probative facts set forth in the seventeenth finding *necessarily* show that the use was adverse. (See *Emmal* v. *Webb*, 36 Cal. 204; *Biddel* v. *Brizzolara*, 56 Cal. 381; *Packard* v. *Johnson*, 57 Cal. 183, 184.)

The judgment must be reversed upon this ground. But inasmuch as certain questions upon the evidence will arise upon a retrial, and have been discussed by counsel, we proceed to examine them.

It appears that in 1861 one Joseph Bache was the owner of the spring above mentioned, and conducted its waters through a flume or ditch across the land of two brothers named Antonini (now owned by the defendant), to his own land, which is now owned by the plaintiff. The parties were friendly, and it was agreed between them that, in consideration of certain work to be done upon the flume or ditch, the Antoninis could use the water on alternate days. This was by permission of Bache and under him. One of the Antoninis testified as follows: "We had no arrangement with Bache about this water; we only got the water from Bache just as a favor from a neighbor." And Bache's son says: "They were good neighbors, and my father let them have the water whenever they needed it. My father says: 'Whenever you come to sell out the place, Mr. Antonini, I want to have my right to the water.'"

In 1877 the Antoninis conveyed their land to one Sanguinnetti; and shortly afterward a lease was signed by both Bache and Sanguinnetti, and recorded, whereby, in consideration of one dollar, Bache leased to Sanguinnetti, for the term of ten years, "one half of the water flowing in his ditch . . . . every alternate day from twelve o'clock noon to twelve o'clock noon the next day." The evidence sufficiently shows the delivery of this lease. And notwithstanding some ambiguity in its language, we think it clear from the circumstances that the proper construction is, that the lessee was to have the use of half of the water only, and that such half was to be arrived at by the use of the whole stream for half the time. This seems to have been the practical construction put upon it by the parties. And we think it wholly inadmissible to say that the intention was to give the lessee the right to the use of half of the stream on every alternate day, leaving him free to claim the other half absolutely. Such being the evidence, we think that the defendant cannot rely upon the use of the water by his

predecessors as giving him a prescriptive right, and that the cases cited by the learned counsel are not in point.

In January, 1880, Sanguinnetti conveyed his land to the defendant, "together with all the water rights belonging to or heretofore used in connection with said lots of land." It does not appear that the defendant used the water under the lease. According to the plaintiff's own testimony, when the defendant acquired the land he "refused to take another lease from me; he said to me that he was entitled to one half of the water, and he was going to have it. He also said, if by law I was entitled to all the water, that he would not let the water go through his ranch." And according to the testimony of one Marengo, who conducted the negotiation with Sanguinnetti on the part of the defendant, the following is what occurred: "I said to Bache, I think we can compromise this matter with you; he said we can if you will pay me something; I asked him how much he wanted. . . . . He said, if you will pay me one hundred dollars I will do it. I told him, if you want, I will give you fifty dollars, and be done with the matter. He thought a little while, and then he says all right. So he took it; was glad to take it. This agreement was made with Bache before the deed from Sanguinnetti was made to Restano. Restano was to pay Sanguinnetti $3,000; he only paid $2,950. The other fifty dollars I told Restano to pay to Bache. We paid Bache the fifty dollars the same day the deed was executed, after the deed was made and before Restano went into possession. I was present when Giacomo Restano paid him the money. Restano went into possession of the place next day. From that time up to the present time I know Restano has been claiming one half of the water, and asserting such claim over it."

It is conceded by the learned counsel for the defendant that this agreement did not amount to a valid conveyance of the water right, for the reason that it was not

in writing.   But he contends that it is evidence tending to show that the use by defendant was adverse to Bache, and to establish a prescriptive right in the defendant. And in this we agree.   If the defendant can show upon a retrial a sufficient adverse use of the water for five years from the above transaction, we think he will be entitled to judgment in his favor.   It is argued for the plaintiff that in order to recover upon this ground, the defendant must show that he paid all the taxes which have been assessed.   It has been held, however, that if no taxes are found to have been assessed, it need not be found that the party claiming by adverse possession has paid taxes. (*Heilbron* v. *Last Chance Co.*, 75 Cal. 117.)   In other words, the requirement as to payment of taxes does not apply where none have been assessed to anybody.   And the inference is, that the burden of showing that none have been assessed is not upon the claimant by possession. That is a negative which he is not required to prove.   If there has been an assessment, it is for the other party to show the fact.   This is the rule which convenience requires.   For it is an easy matter to show that an assessment has been levied, but a difficult one to show that none have been levied for a series of years.

We advise that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.