[Civ. No. 1965.    Third Appellate District.—May 10, 1919.]

## J. J. MONROE, Appellant, v. MARY PLEASANTS et al., Respondents.

[1] WATERS AND WATER RIGHTS—TITLE BY PRESCRIPTION—PAYMENT OF TAXES—WHEN FINDING UNNECESSARY.—In an action to establish a prescriptive title to a water right in a stream or creek to which the lands of the party claiming the right are riparian, the failure of the court to find that the taxes had been levied and assessed on the water right and paid by the parties in whom the title to the water right is found is not fatal to the judgment, where no evidence was introduced by the opposing party that any taxes were or ever had been levied and assessed upon such water right.

[2] ID.—AMOUNT OF WATER DEFENDANTS ENTITLED TO—CERTAINTY OF JUDGMENT.—In such action the findings and judgment of the trial court are not void for uncertainty for failure to specify in inches the amount of water to which the defendants are entitled, where it finds that the plaintiff is entitled to the use of none of the waters of the stream in question, but that the defendants, having since a given date continuously used all the water thereof for beneficial purposes, are entitled to all said water, and it is further found that the quantity of water flowing in said stream does not exceed fifty inches, measured under a four-inch pressure.

---

1. Prescriptive title to water, note, 93 Am. St. Rep. 712.

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jamison & Wylie for Appellant.

Daly B. Robnett for Respondents.

HART, J.—Plaintiff brought the. action to have defendants enjoined from diverting fourteen-fifteenths of the waters of Dodson Creek, in the county of Modoc, and to have it decreed that plaintiff was entitled to that quantity of water from said stream for the irrigation of certain lands owned by him. He claimed to be the owner of all of the waters of said stream by appropriation by his grantors, more than forty years prior to the commencement of the action, but alleged that he had permitted defendants to use one-fifteenth of said water for the purpose of irrigating a small garden and some fruit trees. Plaintiff also claimed ownership by prescription, alleging open, notorious, and adverse possession and the payment of all taxes levied against his water rights, dams, and ditches for more than five years preceding the commencement of the action.

By way of separate defense, defendants alleged in their answer that defendant, Mary A. Pleasants, and her grantors, for more than thirty-eight years prior to the commencement of the action, had been the owners of certain lands, sixty acres of which were riparian to the watershed of said Dodson Creek, and were entitled to the water thereof for purposes of irrigation, and that fifty inches of water, measured under a four-inch pressure, were reasonably necessary for the irrigation of said lands. Ownership of said waters by appropriation and also by adverse possession was also alleged. The answer prayed that defendants be adjudged the owners of fifty inches of the water of said stream.

Plaintiff alleged that at the beginning of the irrigating season the creek carried two hundred inches of water, while defendants denied that it ever contained more than fifty inches, all parties alleging that it diminished to practically nothing during the dry seasons.

The judgment was in favor of the defendants and the appeal is by the plaintiff from said judgment.

The claim for a reversal of the judgment is based upon these propositions: 1. That certain findings essential to the support of the judgment are not supported by the evidence; 2. That defendants, having relied on adverse user or a prescriptive right to the water, did not prove and the court, therefore, made no finding that they and their predecessors, etc., "have paid all the taxes . . . which have been levied and assessed upon" said water right (Code Civ. Proc., sec. 325, subd. 2); 3. That the judgment is uncertain in that it awarded *all the water* of the stream to the defendants instead of a definite number of inches.

1. The following findings are those attacked by the appellant as not supported by the evidence: 1. That the quantity of water flowing in Dodson Creek does not exceed fifty inches, measured under a four-inch pressure; 2. That at least sixty acres of the land of the defendant, Mary Pleasants, is irrigable from said stream and is riparian thereto, and that fifty inches of water are reasonably necessary for the growing of crops on said land; 3. That defendant, Mary Pleasants, commencing with the year 1886, and for more than five years continuously thereafter, openly, notoriously, uninterruptedly, peaceably, and adversely, diverted and used all the waters of said stream for the irrigation of her said lands and was so using them at the time of the commencement of the action; 4. That all of the water of said stream is necessary and indispensable to the proper irrigation of said defendant's lands; 5. That since the beginning of the year 1886 plaintiff and his grantors made no beneficial use of said waters, but that defendant, Mary A. Pleasants, did.

The lands of defendants are situated on Dodson Creek above those of the plaintiff.

In the year 1873, one Richard C. Robinson, the original homesteader of 160 acres of plaintiff's land, filed in Siskiyou County, of which Modoc County at the time was a part, an appropriation of one hundred inches of water of the flow of Dodson Creek. In 1875 Robinson conveyed his right, title, and interest in the homestead and in his said water right and a certain ditch to one Charles U. Snyder, who secured a patent for the land in 1877. In 1885

Snyder became financially involved and made an assignment to one Louis Sachs of about 2,200 acres, known as the Willow Ranch, including the land of plaintiff, which the latter acquired in 1905 and has owned ever since.

Walter Bonner, a witness called on behalf of plaintiff, testified that he first became acquainted with the lands of plaintiff and defendants in 1875; that he worked on plaintiff's land in 1899 and in other years; that hay had been raised on the land since 1875 and that the crop must have been irrigated by water from Dodson Creek. It was stipulated at the trial that Frank Plummer and one Gillette, if present, would testify substantially to the same facts as did the witness, Bonner.

J. M. Kirkpatrick testified that he had been acquainted with the land of plaintiff since 1900; that in the fall of that year he had purchased some clover and timothy hay grown on said land; that he bought the land in 1903 and sold it to the plaintiff in 1905; that while he owned it he produced hay from about seventy-five acres which he irrigated from the waters of Dodson Creek; that he could not have produced the hay crop without irrigation.

The plaintiff testified that, from the time he bought the place in 1905, he had cultivated and irrigated about 110 acres and raised wild hay thereon.

In 1878 one W. H. Vineyard homesteaded the lands now belonging to defendants and filed with the county recorder of Modoc County a notice of location of fifty inches of the waters of the stream in question, which was called in the notice "Deep Gulch." From 1878 on he used the water for irrigating a garden, orchard, and berries and also for his stock and domestic purposes. In 1885 Vineyard deeded his "water right and water ditches, . . . the same being the water claim located" by the notice above mentioned, to George W. Pleasants, husband of defendant Mary Pleasants, and they moved on to the land in 1886 or 1887. Mrs. Pleasants testified that at that time there was on the place a young orchard of about thirty-five or forty trees, some berry bushes and a garden spot; that they irrigated these and that the trees bore the second year they were there; that later they enlarged the garden and also fenced in a pasture which they irrigated; that they endeavored at all times to use fifty inches of water, but had to guess at it,

as they had no headgate in. She said that some of the water they used went back into the creek "and we figured that the subirrigation and the waste water would be enough for the Willow Ranch lands."

Mrs. Pleasants' two sons, Clyde C. and Porter H. Pleasants, testified that defendants always used all the water for irrigation; that they raised alfalfa, grain, hay, and garden stuff and had fruit trees and that the water was necessary for the cultivation of said crops.

At different times, while plaintiff's lands were included in the Willow Ranch, Grant I. Taggart, H. Barnes, and Frank Barnes were managing the ranch. They testified that they never used the water or made any claim to it and that Mr. Pleasants was using it.

In the year 1907–8 plaintiff leased his land to one Ernest Chandler, who testified that he used such water as was permitted to come down; that he knew defendants were using the water and that he (Chandler) needed much more water than he got.

It appeared that the flow of the water had never been measured, but several witnesses testified that there were about fifty inches of water in the stream.

It is enough to say upon the point under consideration that the foregoing statement of the evidence is itself sufficient to show that the challenged findings are amply supported.

[1] 2. Conceding for the purposes of this case that to establish a prescriptive title to a water right growing out of a stream or creek to which the lands of the party claiming the right are riparian, it is necessary to observe the requirement in that respect as to land of the proviso of subdivision 2 of section 325 of the Code of Civil Procedure, and so show that all the taxes which have been levied and assessed thereon have been paid by the party claiming title by prescription and his predecessors and grantors, the answer to the contention of the appellant that the failure of the court to find that taxes had been levied and assessed on the water right and paid by defendants is fatal to the judgment is found in the fact that there is no evidence in the record that any taxes were or had ever been levied and assessed upon the water right in question, and, therefore, there was no call for a finding as to that proposition.

(*Heilbron* v. *Last Chance Water Ditch Co.*, 75 Cal. 117, 123, [17 Pac. 65]; *Oneto* v. *Restano*, 78 Cal. 374, 379, [20 Pac. 743]; *Spargur* v. *Heard*, 90 Cal. 221, 229, [27 Pac. 198]; *Baldwin* v. *Temple*, 101 Cal. 396, 404, [35 Pac. 1008]; *Silva* v. *Hawn*, 10 Cal. App. 544, 551, [102 Pac. 952]; *Smith* v. *Smith*, 21 Cal. App. 378, 380, [131 Pac. 890].) These cases hold that the requirement of the payment of taxes as an element of adverse possession does not apply where no taxes have been assessed. "And," it is said in *Oneto* v. *Restano*, *supra*, "the burden of showing that taxes have been assessed is upon the party combating the claim of adverse possession." (See, also, as to the latter statement, *Baldwin* v. *Temple*, 101 Cal. 404, [35 Pac. 1011].)

[2] 3. In support of the proposition that the findings and judgment are uncertain in that the quantity of water which the defendants are thereby awarded is not specified in inches, the appellant cites the case of *Riverside Water Co.* v. *Sargent et al.*, 112 Cal. 230, [44 Pac. 560]. In that case, which involved a controversy as to the relative rights of the plaintiff and defendants to the use (acquired by appropriation) of water flowing in the Santa Ana River, in San Bernardino County, the court found that plaintiff was the owner of all the water flowing in said river, "except so much thereof as defendants are entitled to take and use, as hereinafter stated," and that defendants had, for more than six years before the commencement of the action, continuously diverted water from said river by means of "said dam and said ditch, and has the right to take the water by those means to the extent of the full capacity of said ditch, . . . and during the irrigating season, . . . , to wit: from the fifteenth day of April to the fifteenth day of September of each year, . . . , to the extent of all water being and flowing in said river at the place of said diversion." The judgment substantially conformed to said findings. The court, reversing the judgment, said: "The decisions of this court establish that in cases like the present the findings and judgment must fix the extent of the superior right, viz., the quantity of water to be allowed to the party whose claim is paramount; otherwise, the judgment fails to attain the certainty necessary to an estoppel upon the main subject of the litigation. (Citing cases.) In this instance, the court has not found the disputed quantity nor data from

which it may be calculated. In view of the fact, well known, that the carrying capacity of a water ditch is subject to rapid changes, being affected by the nature of the soil through which it passes, the rapidity and consequent scouring force of its current, the care it receives, and other matters more casual, the finding here seems well devised, as said in *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 182, [22 Pac. 76], to 'lead to future disputes and litigation'.'' There is a clear distinction between that case and this. Here the finding is that the plaintiff is entitled to the use of none of the waters of Dodson Creek, but that the defendants, having since the year 1886 continuously used all the water thereof for beneficial purposes, are entitled to all said water, and it is further found that the quantity of water flowing in said stream does not exceed fifty inches, measured under a four-inch pressure. The judgment follows the findings. Thus it will be noted that here there is but one right dealt with by the findings and judgment—the right of the defendants. The evidence is sufficiently ample to support the finding that the plaintiff is not entitled to any of the water flowing in said stream. Therefore, even if the judgment were less certain than it could have been made as to the quantity of water awarded to the defendants, the fact of such uncertainty is immaterial to the plaintiff. (*Watson* v. *Lawson,* 166 Cal. 235, 243, [135 Pac. 961].) Of course, where there are two adverse claimants of a water right and the court finds that both are entitled to the use of the water of a stream, there should be as definite a judgment as the circumstances or conditions will permit defining the respective rights of the parties to the water or fixing the proportion of the water each is entitled to, and the manner and times of use and diversion, so that each, particularly the second or inferior claimant, may know when his right attaches. (*Watson* v. *Lawson, supra.*) It is clear to our minds, from an examination of the evidence, that the court has done this here. There is testimony which shows that the quantity of water flowing in the stream was fluctuating. On occasions, according to the seasons, there would be a very small or limited amount of water in the creek, while on others there would be a reasonably fair flow, not, however, exceeding fifty inches, according to the well-supported finding of the court. It would

seem, therefore, that the court did the best it could do under the evidence and the circumstances by finding the maximum quantity of water flowing in the stream at any time and then finding that the defendants were entitled to all the water up to that maximum.

There is some claim that the evidence does not show that the defendants used all the water of the stream. There is some testimony that certain of the waters of the creek did flow on to the Robinson place on certain occasions. But the testimony further shows that when water from the creek did reach the Robinson land it was occasioned either by the flood water in the first part of spring and before anyone could make any beneficial use of the water or by water which naturally ran off the sloping lands of the defendants after they had made use of it.

There are no other points to be considered.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 7, 1919.

All the Justices concurred, except Melvin, J., and Olney, J., who were absent.