[Civ. No. 4780. First Appellate District, Division Two.—June 20, 1924.]

## CITY OF GILROY (a Municipal Corporation), Respondent, v. THOMAS P. KELL et al., Appellants.

[1] WATERS AND WATER RIGHTS — EXISTENCE OF EASEMENT—ADMISSIONS OF PREDECESSOR.—In an action by a municipal corporation to determine its right to the water of a given stream, to maintain a dam across said stream and a pipe-line across the defendants' property, and to make the necessary repairs thereto, it is not error to admit in evidence two deeds from the predecessor in interest of the defendants whereby she, at a time when she was the owner of defendant's property, conveyed to certain persons (not defendants) other property farther up the stream, reserving in said deeds the right of way and privilege of taking water from said stream to plaintiff's predecessor in interest.

[2] ID. — ADVERSE POSSESSION — USUAL IMPROVEMENTS.—In such an action, the plaintiff may establish its right to the water of said stream by adverse possession without proving that its pipe-line was protected by a substantial inclosure, as such pipe-line itself constituted the "usual improvements" connected with the right to take water from the creek, within the meaning of that term as used in section 325 of the Code of Civil Procedure.

[3] ID.—PAYMENT OF TAXES — ABSENCE OF ASSESSMENT. — It is not necessary that the plaintiff should have paid the taxes upon its easement, in order to establish its right to the water of said stream by adverse possession, where no taxes were levied or assessed against such property.

[4] ID. — PERMIT TO TAKE WATER—EXCEPTION OF VESTED RIGHTS.— The granting to defendants by the state water commission of a permit to take certain water from said stream did not give defendants any rights prior or superior to those of plaintiff where at the time of granting such permit, plaintiff had certain vested rights and the permit was given "subject to vested rights."

[5] ID. — RIGHT TO MAKE REPAIRS — JUDGMENT.—The finding by the trial court that plaintiff had the right to enter upon the land of

---

1. See 10 Cal. Jur. 1088; 1 R. C. L. 484.

2. Acquisition of title to property by municipal corporation by adverse possession, note, Ann. Cas. 1915C, 774. See, also, 18 Cal. Jur. 1020.

Establishment of prescriptive right on the part of municipality by use of underground water-pipe, note, 2 L. R. A. (N. S.) 977.

3. See 1 Cal. Jur. 562; 1 R. C. L. 699.

defendants for the purpose of maintaining and repairing its pipe-line and keeping the stream in and above the dam in a clean condition and free from driftwood and gravel, was not too general and uncertain, as such finding did not give plaintiff the right to roam all over defendants' property, but limited plaintiff to a right of entry at reasonable times, in a reasonable manner, upon a direct practical route and for the exclusive purpose mentioned.

[6] ID.—EASEMENT BY PRESCRIPTION—RIGHT TO MAKE REPAIRS.—An easement by prescription implies the right to make repairs if such repairs do not injuriously increase the burden upon the servient tenement.

[7] ID.—CONTEMPLATED CHANGES — EVIDENCE — JUDGMENT.—The fact that the city engineer testified that he contemplated making certain changes in the grade and in the size of the pipe used was wholly immaterial, where the findings and decree specifically stated that plaintiff was entitled merely to replace its worn-out pipe with new pipe of the same size as then laid upon defendants' land and in the same place and in the same grade.

(1) 40 Cyc., p. 768.   (2) 40 Cyc., p. 728.   (3) 2 C. J., p. 204, sec. 416.   (4) 40 Cyc., p. 703.   (5) 40 Cyc., p. 768.   (6) 19 C. J., p. 981, sec. 231, p. 982, sec. 231.   (7) 40 Cyc., p. 768.

APPEAL from a judgment of the Superior Court of Santa Clara County.   J. R. Welch, Judge.   Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

H. A. Blanchard for Appellants.

John P. Fitzgerald, Walter G. Fitzgerald and Rea & Caldwell for Respondent.

LANGDON, P. J.—This is an appeal by the defendants from a decree adjudging that the City of Gilroy is the owner of the right to take water from Uvas Creek in the county of Santa Clara, state of California, at a point where it has erected a dam across the same upon certain real property described in the complaint and owned by the defendants. The further provisions of the decree will be discussed hereinafter.

6.  See 9 Cal. Jur. 954; 9 R. C. L. 795.
7.  See 9 R. C. L. 796.

Plaintiff alleged that it was the owner of said right to take water from Uvas Creek and also of certain dams and pipe-line beginning at the upper end of said dams and running down and along the westerly bank of said stream until it reaches the southerly line of said property belonging to said defendants, and thence to the City of Gilroy, together with the right to enter upon and pass over the lands of defendants for the purpose of maintaining and repairing said pipe-line and dams in a clean condition and free from driftwood and obstruction to the flow of the water; that for more than thirty years the plaintiff has maintained said pipe-line over the lands of defendants and has taken water from said creek at said point of diversion and has caused the same to run through said pipe-line, and has traveled over and across the lands now claimed by said defendant for the purpose of maintaining and repairing said pipe-line and dams; and has, during all of said time, entered thereon with teams whenever necessary for the purpose of hauling material thereon to repair said pipe-line and dams and during said time has used the gravel from the bed of said creek for the purpose of making said repair; that said use and occupancy has been continuous, uninterrupted, peaceful, open, and notorious with the knowledge of the owner of said land under claim of right and adversely to the whole world; that the uses to which said water has been and now are being put is for irrigation, household, and domestic uses by the inhabitants of the City of Gilroy and that said plaintiff and said inhabitants thereof have no other adequate supply of water or means of obtaining the same; that at the time of the filing of the complaint the pipe-line referred to therein was broken and required immediate repair; that defendants have driven and continue to drive the employees of plaintiff from said property and refuse to allow them to enter upon said property for the purpose of repairing said pipeline. It was also alleged that the defendants maintained corrals for hogs upon the borders of said stream, thereby polluting the waters thereof. An injunction was asked, restraining the defendants from interfering with said alleged rights of plaintiff.

Defendants filed an answer and cross-complaint, denying plaintiff's right to take the water of the creek, admitting its ownership of the dams and pipe-line, but alleging that

these were constructed upon the property by permission of the predecessors in interest of defendants; and denying that plaintiff had any right to enter upon said land for the purpose of maintaining or repairing said dams or pipe-line, or for the purpose of keeping the stream in and about said dams and pipe-line free from driftwood or any obstruction to the flow of the water, save and except by permission of defendants. It is alleged that the use and occupancy of the said land by the plaintiff has always been by permission of defendants and their predecessors and not adversely to said owners, and with the understanding that any water taken from said creek over and across said real property should be taken subject to the riparian rights of the owners of the land. The cross-complaint denies interference with the employees of plaintiff while engaged in the necessary repairing of the pipe-line. It is also alleged that the plaintiff has never paid any taxes levied or assessed against said real property or any portion thereof, but that the defendants and their predecessors in interest have always paid the same; that plaintiff has never inclosed any portion of said real property with any substantial inclosure or any inclosure, and that plaintiff's entry upon said property was not under color or claim of title or founded upon a written instrument, but was with the permission of the owners of the land; that plaintiff is not the owner of any lands riparian to said Uvas Creek and its use of the water of said Uvas Creek is subject to the riparian rights of the defendants. It is also set forth that defendants are riparian owners along said Uvas Creek and entitled to a reasonable use of the waters of said creek for household and irrigation purposes; that the state water commission of the state of California had issued to defendants its permit granting to defendants, subject to vested rights, "that the amount of water diverted by her should be on the basis of one cubic foot per second, continuous flow, to eighty acres of irrigated land, and that water may be diverted to the full capacity of the ditches to be constructed for such time during any thirty days period as to result in an amount equivalent to said continuous flow allowance"; that any and all rights of plaintiff are subject and subordinate to the rights granted to defendants under said permit of the said state water commission of the defendants under said permit of the said state water commission of the state

of California; that plaintiff threatens to change and alter the construction, course, level, grade, and location of its pipe-line and dams now upon said property and thereby will take all the waters of Uvas Creek, or far in excess of the amount of waters of said creek to which they may be entitled and will thereby deprive defendants of the waters of said creek. Defendants then set out various reasons why any change in the construction of the pipe-line would irreparably injure them and prayed that the court determine the rights of the respective parties to the action, declare that the rights of plaintiff are subject to the rights of defendants as set forth and alleged in the cross-complaint and that the plaintiff be enjoined from committing the acts complained of by defendants. The answer to the cross-complaint denied practically all of its allegations, and after hearing a large amount of evidence, the trial court found: That the rights of the plaintiff were, substantially, as alleged in its complaint and that for more than twenty years last past plaintiff has maintained said pipe-line over said lands of defendants and has taken water from said creek at said point of diversion and has caused the same to run and flow through said pipe-line and has traveled over and across the lands of defendants for the purpose of maintaining and repairing said pipe-line and dam, and has, during all of said times, entered thereon with teams whenever necessary for the purpose of hauling materials thereon; that said use and occupancy has been continuous, uninterrupted, peaceful, open, and notorious with the knowledge of the owners of said land, under a claim of right and adversely to the whole world during all of said times; that during said time the said City of Gilroy used all the water of said Uvas Creek with the exception that in flood times great quantities flowed over and across said dam, and in the summer months a small quantity of water seeped through the bottom of said dam and appeared in small pools at certain distances below the said dam; that in the year 1901 Catherine Dunne, the then owner of the real property now owned by defendants, and defendants' predecessor in interest, granted to plaintiff the right, in writing, to rebuild said dam as it is now constructed and the pipe-line as it is now installed, with the express understanding and provision therein contained that nothing contained in said agreement should prevent the said City of Gilroy

from diverting from the said Uvas Creek a volume of water
equal to the capacity diverted before the reconstruction of said
dam and pipe-line; that before said written instrument, and
since about the year 1870, plaintiff had diverted and used
all of the water of said Uvas Creek, except that in flood
time a large amount of water in said creek was not used
by it, and during the summer months a small amount
of water seeped down through the gravel of the creek in the
bed of the dam as then constructed, and reappeared below
in pools for a short distance below said dam; that at the
present time the said upper dam and the said pipe-line
herein referred to are out of repair, and that unless the
same are immediately repaired the City of Gilroy and the
inhabitants thereof will be without an adequate supply of
water and thereby irreparable injury will be occasioned to
plaintiff; that the said pipe-line is rusted and broken and
that it is necessary to replace the same entirely as the same
is now constructed through the property of said defendants;
that plaintiff has the right to enter upon the lands of de-
fendants for the purpose of replacing said pipe and laying
new pipe for the entire length of said pipe-line across the
lands of defendants provided said pipe is replaced with the
same size of pipe as is now laid on said land and in the same
place and upon the same grade as the same is now laid,
coupled with the right to do all necessary work and make
all necessary excavations for accomplishing said purpose, and
also has the right to repair the southerly end of said dam
in the manner hereinafter set forth.

With reference to the dam, it was found: That the said
upper dam across said Uvas Creek has developed many leaks
along the bottom and has been damaged at the southerly
end thereof where the high water has washed away the dirt
bank.   The accumulation of gravel about the dam has ren-
dered the valve in the clean-out pipe inoperative, and has
recently greatly reduced the efficiency of the fourteen-inch
diversion pipe from said dam.   That it will be necessary
in order to remedy this condition and to allow plaintiff to
divert the water to which it is entitled to protect the free
flow of water into its said diversion pipe immediately above
said dam and to prevent the accumulation of sand and gravel
and other obstructions to such free flowage, and it also has
the right and it is its duty to protect the water taken from

said Uvas Creek for the use of its inhabitants from contamination and impurities, and to that end it is necessary to construct and maintain an open box around the intake of the clean-out pipe and also for the purpose of permitting the free operation of the valve in the clean-out pipe and also for the purpose of maintaining a body of clear and pure water around the intake of the diversion pipe; that in order to prevent the deposit of sand and gravel in the open box above described, it is necessary that the top of the box should be covered with heavy planking placed at the level of the bottom of the spillway in the dam so that all sand and gravel moving in the creek during flood waters will be carried through the spillway and deposited along the bed of the creek below the dam. That it is necessary to remove a part of the gravel bank which has accumulated immediately above the dam during flood waters; that it is necessary after the forebay has been cleared of said gravel that there should be constructed upon the bedrock on the upstream side of said dam a settling-box of redwood cribbing, with a concrete foundation eight inches at the top in the shape of an equilateral triangle each side thereof being sixteen feet in length. Further details relating to the construction of the settling-box are then set forth in the findings of the court, and it is found: That said above repairs and replacements will cause no injury to defendants or their land and will be no greater or different burden upon said servient tenement than the dam and construction as it now exists and has existed during all the times mentioned herein; that said construction and said repair will not allow plaintiff to divert any more water than that to which it is entitled as herein found and will not prevent, and is not intended to prevent the water in summer-time from seeping through the bed of the creek in and above the dam as it has done in the past; that after the making of said repairs the condition of the defendants' land and the amount of water available for defendants' use will not be materially changed from present and past conditions.

Appellants' first objection is to the finding that the City of Gilroy has a right to use the gravel of the stream for the purpose of making repairs and the portion of the decree based thereon. Appellants contend that the evidence does not justify this finding and they are probably correct in this contention. However, the respondent has stated that it

is willing to waive this right and will consent to an amendment of the findings and decree to this extent. It is unnecessary, therefore, for us to discuss the matter further.

[1] Appellants object to the introduction in evidence of two deeds from Catherine Dunne, their predecessor in interest, to Parr and McLeon, dated and recorded on February 19, 1881. At this time Catherine Dunne was the owner of the Kell property and the lands transferred were farther up the stream. Mrs. Dunne reserved in both deeds the right of way and privilege of taking water from the Uvas Creek to Gilroy Water Company, the predecessor in interest of the plaintiff. This was evidence that as early as 1881 it was recognized that Gilroy Water Works had some rights and that Mrs. Dunne was protecting herself when deeding lands upstream to other parties. True, these deeds would not be in the chain of title to the Kell property and would not furnish notice to appellants of the contents thereof. They were immaterial for that purpose, but they serve another purpose in the record as before indicated and their admission was not error.

[2] It is contended that the plaintiff could not establish its rights to the water by adverse possession (sec. 325, Code Civ. Proc.) without proving that its pipe-line was protected by a substantial inclosure, which it was found by the court did not exist, and without proving that it had paid all taxes levied and assessed against the property claimed by it.

Section 325 of the Code of Civil Procedure requires a substantial inclosure or *usual improvements,* and it appears that the usual improvements connected with a right to take water from the creek were placed upon the premises in the form of a pipe-line. The right to divert water from a stream, in its very nature, cannot be protected by a substantial inclosure, and if the usual improvements connected with the enjoyment of such an easement are made, the statute is satisfied. (*Daniels* v. *Gualala Mill Co.,* 77 Cal. 300, 304 [19 Pac. 519]; *Allen* v. *McKay & Co.,* 120 Cal. 338 [52 Pac. 828].)

[3] As to the contention that the plaintiff should have paid the taxes upon its easement, it appears from the record that no taxes were ever levied or assessed against the same. The statute requires the payment of such taxes as are levied and assessed against the property and where none are levied

or assessed, there is no requirement to pay them to establish adverse possession. (1 Cal. Jur., p. 601, sec. 74; *Frederick* v. *Dikey,* 91 Cal. 358 [27 Pac. 742]; *Elliott* v. *McIntosh,* 41 Cal. App. 763 [183 Pac. 692]; *Monroe* v. *Pleasants,* 41 Cal. App. 139 [182 Pac. 330]; *Oneto* v. *Restano,* 78 Cal. 374, 379 [20 Pac. 743]; *Humphreys* v. *Blasingame,* 104 Cal. 40 [37 Pac. 804].)

[4] Appellants rely upon the permit of the state water commission allowing her to take a certain quantity of water from Uvas Creek for irrigating her land. This permit itself stated that it was given "subject to vested rights" and in the proceedings before us upon appeal it was found that the plaintiff had certain vested rights and the permit granted to defendants did not even purport to interfere with these rights.

Appellants state their position to be that they are entitled to compensation for any water taken by the plaintiff from Uvas Creek in excess of what was diverted by the old dam in 1900. This contention is answered by the findings of the court that the repairs to the pipe-line authorized by the findings and decree will cause no greater burden upon said servient tenement than the dam and construction as it now exists and has existed during all the times mentioned in the findings; that said construction and said repair will not allow plaintiff to divert any more water than that to which it is entitled, and that after the making of said repairs the condition of the defendants' land and the amount of water available for defendants' use will not be materially changed from present and past conditions. There is evidence in the record to support these findings, and the decree merely permits plaintiff to replace its worn-out pipe with new pipe of the same size as is now laid upon said land and "in the same place and upon the same grade as the same is now laid."

[5] Complaint is made of the finding that the plaintiff has the right to enter upon the land of defendants for the purpose of maintaining and repairing its pipe-line and keeping the stream in and above the dam in a clean condition and free from driftwood and gravel; that said right to enter includes the right to enter with teams and wagons for the purpose of hauling materials thereon for the purpose of

repairing and maintaining said dam and pipe-line. It is contended that this finding is too general and uncertain and should have defined and limited the road that the plaintiff must take in entering to make its repairs, and also that the evidence does not show that the plaintiff ever did more than to enter and clean out leaves in the stream and that the record does not disclose that it ever exercised a right to enter with teams upon the property. With reference to the first point, since the finding is that plaintiff has the right to enter for the purpose of making repairs, of course, plaintiff has no right to roam all over the property as the appellants seem to fear, but must be held to a reasonable exercise of the license. The finding does limit the entry when it provides for an entry simply to make repairs; that means an entry at reasonable times, in a reasonable manner, upon a direct practical route and for the exclusive purpose mentioned. We do not think it is necessary that the plaintiff should have entered previously with teams in order to maintain its right to so enter now. If the repairs heretofore required for the water system did not require the use of teams that circumstance should not make it necessary for the plaintiff to send its men in on foot when the ravages of time make it necessary to use large amounts of material in making necessary and proper repairs. [4] An easement by prescription implies the right to make repairs if such repairs do not injuriously increase the burden upon the servient tenement. "Every easement includes what are termed 'secondary easements'; that is, the right to do such things as are necessary for the full enjoyment of the easement itself. But this right is limited and must be exercised in such reasonable manner as not to injuriously increase the burden upon the servient tenement." (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69].) In the instant case, it was found that the exercise of this right as permitted by the decree would not increase such burden. "It is well settled that the owner of an easement cannot change its character, or materially increase the burden upon the servient estate, or injuriously affect the rights of other persons, but within the limits named, he may make repairs, improvements or changes that do not affect its substance." (*Burris* v. *People's Ditch Co.,* 104 Cal. 248 [37 Pac. 922]. See, also, *Pico* v. *Colimas,* 32

Cal. 578, 581.)    These authorities answer the objections made
to the portions of the decree permitting repairs to the dam
and the erection of the settling-box.    These are incidental
changes which do not change the substance of the easement
of the plaintiff and which are necessary for the enjoyment
of the same and do not, according to the findings, increase
the burden upon the servient estate.

[7]    Appellants call attention to pages of testimony of
the city engineer indicating changes which he contemplated
making in the grade and size of the water-pipes, all of which
is immaterial and utterly beside the questions involved upon
this appeal, since the findings and decree specifically state
that the plaintiff is entitled merely to replace its worn-out
pipe with new pipe of the same size as is now laid upon said
land and in the same place and in the same grade.    We do
not think it is necessary, as repeatedly urged by appellants,
that the findings and decree should state the exact number
of gallons of water which the plaintiff may take each day,
in view of the facts found by the court.    If the pipe-line is
replaced in every particular as it has existed for many
years, obviously the city will continue in the future to take
the amount of water it has taken in the past, and it was so
found by the court.    True, if the intake pipes are allowed
to fill with gravel and debris, the city will secure less water,
and defendants rely upon this condition to increase their
own rights; but we have seen from the cases herein cited
that the city has a right to clear away these impediments to
its water supply as it becomes necessary to do so, and hav-
ing this right, it follows that the circumstance that at any
particular time the gravel may have partially impeded the
flow of water into the pipes cannot deprive plaintiff of its
right to clean and protect its pipes merely because after the
cleaning, the flow of water in increased.    Obviously, if the
gravel did not interfere with the flow of water, and its re-
moval did not increase the water supply, there would be no
reason nor necessity for the incidental privilege attached to
the easement of removing the same.

There are no other matters which require discussion.    The
portion of the decree which declared that the plaintiff is the
owner of the "right to use gravel in said creek for repairing
said dam and pipe-line" is reversed; the remainder of the

decree is affirmed, the respondent to recover its costs upon appeal.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 18, 1924.