[Civ. No. 90. Fifth Dist. Apr. 23, 1962.]

GERTRUDE L. COSTA et al., Plaintiffs and Respondents, v. HARRY G. FAWCETT, Defendant and Appellant.

696

C. Ray Robinson, W. E. Craven and Duane W. Dresser for Defendant and Appellant.

Landram, Silveira, Garrett & Goul and H. K. Landram for Plaintiffs and Respondents.

CONLEY, P. J.—Harry G. Fawcett, defendant and cross-complainant, appeals from a decree quieting the title of Gertrude L. Costa, Joe R. Costa, Manuel A. Costa, Maria V.

Costa, Frank R. Costa and Elizabeth Anna Costa to the southeast quarter of Section 11, Township 11 south, Range 10 east, MDB&M, less certain lands theretofore deeded for a right of way to the Delta-Mendota Canal; he claims that the court erred in holding against him as to his asserted right to harvest the annual crops produced by a row of nut trees growing along the southerly border of the land, which were planted and have been cared for by him for some 23 years.

The complaint alleges that "Plaintiffs are the owners holding and seized of the entire interest of all that certain real property situated in the County of Merced. . . ." describing in detail the quarter section less the land acquired by the Delta-Mendota Canal for its right of way.

In his cross-complaint Mr. Fawcett alleges: "That crosscomplainant is now and for a long time and in excess of five (5) years prior to the date of the filing of the complaint herein has been, the owner and entitled to the possession of a row of walnut trees planted and now growing along and parallel with the north side of Charleston Avenue, a public road situated in the County of Merced, State of California, said road and row of trees being along and parallel with and adjacent to the south line of the southeast quarter of Section 11, Township 11 South, Range 10 East, MDB&M."

The cross-complaint further avers that Charleston Avenue has been open to the public and has been in continuous and uninterrupted use by cross-complainant and by the public for in excess of 20 years, and: "That cross-complainant has for many years and in excess of five (5) years immediately preceding the filing of this action continuously and without interruption or interference claimed the right to use and has used said public road aforesaid and has pruned, sprayed and otherwise cared for and exercised dominion over the said walnut trees planted and growing as aforesaid, openly, notoriously and under a claim of right and adversely to the cross-defendants, and each of them, and to said cross-defendants' predecessors in interest."

The findings of fact and conclusions of law and the judgment uphold the asserted rights of the plaintiffs and reject the claim of cross-complainant except as to the road:

"2. That for more than twenty years last past there has existed and been used by the general public a roadway upon and along the South line of the Southeast quarter of Section 11, Township 11 South, Range 10 East, M.D.B. & M., which

698

said roadway is commonly known and referred to as Charleston Avenue; That during all of said time there has existed a barbed wire fence parallel to and to the North of said roadway entirely upon the lands of plaintiff; That during the month of March, 1935, defendant planted or caused to be planted a row of walnut trees upon said Southeast quarter of Section 11, Township 11 South, Range 10 East, M.D.B. & M. said trees being planted South of the fence above referred to and North of said roadway above referred to; That at all times subsequent to the planting of said walnut trees defendant has cultivated, pruned and sprayed said trees and has harvested and retained the crops of walnuts produced thereupon openly and notoriously and under a claim of right and with the knowledge of plaintiffs and without objection by plaintiffs and their predecessors in interest until approximately the year 1956 and shortly before the filing of this action.

"3. That defendant has never at any time made any claim to own the lands where and upon which said walnut trees were planted or growing and has never paid any taxes upon said lands; That in the fiscal year 1956-1957 at defendant's request the County Assessor of the County of Merced, State of California, assessed said trees to defendant as personal property and defendant paid taxes thereon; That thereafter and ever since said time said trees have been assessed to plaintiffs along with and as improvements upon said lands and plaintiffs have paid all taxes levied and assessed or payable upon said land as such for more than five years prior to the filing of the complaint herein."

While the pleadings of the defendant and cross-complainant allege ownership by him of the trees themselves, his counsel clarified his contention during the trial and in the briefs on appeal by admitting that the land, and necessarily the trees growing on the land, are in fact property of the plaintiffs, subject, however, to a *profit à prendre* in defendant's favor. In its opinion, the trial court recognizes that the interest, if any, of the defendant and cross-complainant is a *profit à prendre*—the right to the annual crop of nuts.

The record shows that the cross-complainant owns the real property to the south and west of the quarter section in question. On the section line between the quarter section and land owned by Fawcett there has at all times existed a road dedicated to the public. Immediately north of this road is the row of nut trees which are south of a barbed wire fence, a pole

line and a ditch (recently converted to a subterranean pipeline) running along the southerly side of the Costa property.

In the year 1935 Mr. Fawcett planted some 75 walnut trees north of the road and about 4 or 5 feet south of the above described fence, pole line and ditch. The trees were originally black walnuts, later grafted to English walnuts; several pecan trees are also included in the row. The line of trees extends for approximately a half mile on the Costa property. Fawcett testified that Rodriques, the predecessor of the Costas, was working on his fence at the time the trees were being planted. Fawcett thereafter tended, sprayed and pruned the trees, whitewashed their trunks and harvested the nuts during all of the intervening years; these facts were at all times known to Rodriques and his successors, the Costas.

The plaintiffs admittedly have never at any time taken care of the trees or harvested the nuts. They have paid the annual taxes assessed on the whole quarter section, with one exception; in 1956-57 Fawcett reported to the county assessor that the trees were "private property on governmental property," and in that year they were assessed to Fawcett as an "escaped assessment" and he paid the taxes. In the next and following years they were assessed to the Costas as improvements on their land, and the plaintiffs have paid their taxes ever since that time.

It may be well to recall that: "For the purposes of adverse possession, there may be a cleavage of real estate horizontally as well as vertically. On this principle, standing trees, minerals, oil, and gas, as well as buildings, may be the subject of adverse possession, although another person may have title to the supporting land." (2 Cal.Jur.2d, Adverse Possession, § 6, pp. 504-505.)

"In *Fairbanks* v. *San Francisco & N. P. Ry. Co.,* 115 Cal. 579, 583 [47 P. 450, 451], it is said: 'For the purposes of adverse possession, and the invocation of the statute of limitations, there may be cleavage of corporeal real estate horizontally as well as vertically.' This rule has been held applicable in cases of minerals, oil, gas, and buildings. (1 R.C.L. 738; 2 C.J. 227.) No reason appears why the same rule should not govern in the case of standing trees." (*Red River Lbr. Co.* v. *Null,* 66 Cal.App. 499, 506 [226 P. 812].)

As stated in 28 C.J.S., Easements, § 3(f), page 631: "A right to *profits à prendre* is a right to take a part of the soil or product of the land of another. It is distinguishable from a pure easement; is assignable or inheritable, if in gross; passes

with the estate in connection with which it is enjoyed, if appurtenant thereto; and must be created by grant or prescription.''

In *Richfield Oil Co.* v. *Hercules Gasoline Co.*, 112 Cal.App. 431, 434 [297 P. 73], it is said: ''A 'profit *à prendre*' is considered an interest or an estate in the land itself and this is the principal feature which distinguishes it from a pure easement, which is a right or interest without profit. It is a right to take something out of the soil of another, as a right of common, and also some minor rights as a right to fish, hunt and hawk, or to mine metals, dig for oil; take oil from the land.

''The feature of the right which is of interest to the point under consideration is that it creates an interest in the real property in the nature of a covenant running with the land as distinguished from a mere personal obligation of the owner of the realty. The underlying principle of the right is that it carries the right of entry and the right to remove and take from the land the designated product or 'profit.' A typical case is the right to cut and remove standing timber and the right to mine and remove coal and other minerals.''

Section 801 of the Civil Code specifies among the servitudes or easements attached to land: ''5. The right of taking water, wood, minerals, and other things.''

Section 802 of the Civil Code provides: ''The following land burdens, or servitudes upon land, may be granted and held, though not attached to land: . . . 'Six—The right of taking water, wood, minerals, or other things.' ''

To ripen into title, adverse possession must be actual, open and notorious, hostile to the owner's title, continuous and uninterrupted for five years, and the claimant must pay all the taxes assessed on the property during the period (2 Cal. Jur.2d, Adverse Possession, § 32, p. 537). The defendant concededly has complied with all of these requirements except that the question of tax payment is contested by plaintiffs and cross-defendants; the trial court denied relief to defendant solely on that ground.

The court found ''. . . that during the month of March, 1935, defendant planted or caused to be planted a row of walnut trees upon said Southeast quarter of Section 11, Township 11 South, Range 10 East, M.D.B. & M., said trees being planted South of the fence above referred to and North of said roadway above referred to; That at all times subsequent to the planting of said walnut trees defendant has culti-

vated, pruned and sprayed said trees and has harvested and retained the crops of walnuts produced thereupon openly and notoriously and under a claim of right and with the knowledge of plaintiffs and without objection by plaintiffs and their predecessors in interest until approximately the year 1956 and shortly before the filing of this action."

■ While the burden generally with respect to a claim of title to land by adverse possession is upon the claimant to prove that all taxes were paid by him or in the alternative that no taxes were levied or assessed, this rule does not apply to a claim to an easement by adverse possession. The rationale of this holding is that easements are not normally assessed separately.

■ In *Glatts* v. *Henson,* 31 Cal.2d 368, 371-372 [188 P.2d 745], it is said: "In the case of the acquisition of an easement by prescription the burden of proving that taxes were levied or assessed against the easement (as distinguished from the payment thereof, if levied) rests upon the record owner rather than the adverse claimant. (*Biggs Ditch Co.* v. *Jongste,* 24 Cal.2d 298 [149 P.2d 1]; *Spargur* v. *Heard,* 90 Cal. 221 [27 P. 198]; *Coonradt* v. *Hill,* 79 Cal. 587 [21 P. 1099]; *Oneto* v. *Restano,* 78 Cal. 374 [20 P. 743]; *Chapman* v. *Sky L'Onda etc. Water Co.,* 69 Cal.App.2d 667 [159 P.2d 988]; *McMorris* v. *Pagano,* 63 Cal.App.2d 446 [146 P.2d 944]; *Redemeyer* v. *Carroll,* 21 Cal.App.2d 217 [68 P.2d 739]; *Los Angeles County* v. *Pacific Elec. R. Co.,* 93 Cal.App. 512 [269 P. 767]; *Smith* v. *Smith,* 21 Cal.App. 378 [131 P. 890]; *Koshland* v. *Cherry,* 13 Cal.App. 440 [110 P. 143].) It has been held in regard to the acquisition of the fee, as distinguished from an easement, by adverse possession that the burden is on the adverse claimant to show that no taxes were assessed or that if assessed he paid them. (*City of Burlingame* v. *Norberg,* 210 Cal. 105 [290 P. 587]; *Allen* v. *Allen,* 159 Cal. 197 [113 P. 160]; *Baldwin* v. *Temple,* 101 Cal. 396 [35 P. 1008]; *Reynolds* v. *Willard,* 80 Cal. 605 [22 P. 262]; *In re Dixon,* 120 Cal.App. 635 [8 P.2d 881]; *Redemeyer* v. *Cunningham,* 61 Cal.App. 423 [215 P. 83].) However, the rule as to easements is settled."

■ The requirement of the payment of taxes in order to secure a right by prescription does not apply where no taxes have been levied or assessed. (*Oneto* v. *Restano,* 78 Cal. 374 [20 P. 743]; *City of Gilroy* v. *Kell,* 67 Cal.App. 734 [228 P. 400]; *Humphreys* v. *Blasingame,* 104 Cal. 40 [37 P. 804]; *Smith* v. *Smith,* 21 Cal.App. 378 [131 P. 890].)

In this case not only did the plaintiffs fail to prove that there was a separate assessment of the easement in question, but the record shows positively that there was no separate assessment.

Plaintiffs argue that presumably the trees growing on the entire section were assessed to the Costas as improvements on the quarter section and that therefore they paid the taxes. They point out that section 105 of the Revenue and Taxation Code defines "improvements" as including "(b) All fruit, nut bearing, or ornamental trees and vines, not of natural growth, and not exempt from taxation, except date palms under eight years of age," and contend that inasmuch as the Costas did pay taxes assessed on the improvements, as well as on the land itself, there is a positive showing that the defendant has not proven his title by adverse possession. However, no taxes were separately levied or assessed at any time on the *profit à prendre,* and proof of the payment of taxes as one element of title by adverse possession was unnecessary.

 As all necessary elements of proof of the right to an easement in the nature of a *profit à prendre,* were clearly established, the defendant is entitled to the nut crops grown annually on the trees.

 What are the limits of this right? In *Anderson* v. *Southern Cal. Edison Co.,* 77 Cal.App. 328, 335 [246 P. 559], it is said: "The extent of the servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired. Where, however, the easement is acquired, as here, by prescription or operation of law, its character and extent are fixed and determined by the user under which it is gained. (Civ. Code, § 806.) A right so acquired is *stricti juris* and cannot extend beyond the user. Every easement, it is true, includes 'secondary easements,' consisting of the right to do such things as are necessary for the full enjoyment of the easement; but this right is limited, and must be exercised in such reasonable manner as not to increase injuriously the burden upon the servient tenement. (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 P. 69].)"

 The basic right of defendant and cross-complainant is to harvest and retain the annual crops of nuts grown on the row of trees; as secondary easements, he has the right to enter upon the land in the immediate vicinity of the trees at all appropriate times to give care to the trees, including pruning, spraying, and whitewashing their trunks. As the defend-

ant and cross-complainant is not the owner of the land or of the trees themselves, the right will not persist beyond the life span of the trees; defendant cannot replant any trees that may die in the course of time.

Upon the retrial of the action the court must determine from whatever evidence may be adduced whether the right is appurtenant to other land owned by the defendant and cross-complainant or is a right in gross. (See 28 C.J.S., Easements, § 4, pp. 633-639; Civ. Code, §§ 801, 802; *Callahan* v. *Martin,* 3 Cal.2d 110, 120 [43 P.2d 788, 101 A.L.R. 871] ; *Balestra* v. *Button,* 54 Cal.App.2d 192 [128 P.2d 816].)

The judgment is reversed.

Brown, J., and Stone, J., concurred.